<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARIA B.,

    Plaintiff,

    v.

KILOLO KIJAKAZI,
 Acting Commissioner of Social Security,

    Defendant.

Civil Action No. 21cv20090 (EP)

**OPINION**

**PADIN**, District Judge.

    Plaintiff Maria B. appeals the Acting Commissioner of Social Security's ("Commissioner") denial of disability insurance benefits (DIB) and supplemental security income (SSI). An administrative law judge ("ALJ") found, in substance, that Plaintiff was not "disabled" within the meaning of the Social Security Act (the "Act"). For the reasons below, this Court will **AFFIRM** that denial.

**I.    BACKGROUND**

    On October 18, 2016, Plaintiff filed for benefits, alleging that she was disabled since September 4, 2015 based on impairments including lupus; pain in her hands, fingers, feet, knees, elbows, back, neck, and shoulders; fatigue; depression, anxiety; carpal tunnel syndrome, fibromyalgia; and abdominal discomfort. R. 90.[1] Plaintiff's initial application was denied on December 14, 2016. R. 182. Plaintiff's reconsideration application was also denied on February 7, 2017. R. 189.

---

[1] "R." is the administrative record. D.E. 4.

At Plaintiff's request, ALJ O'Leary held a hearing on November 5, 2018. R. 37-61. On December 3, 2018, ALJ O'Leary denied Plaintiff's application, finding that she was not "disabled" within the meaning of the Act. R. 157-69.

Plaintiff administratively appealed. On July 13, 2020, the Appeals Council vacated the first ALJ's decision and remanded for further consideration. R. 173-76. The Appeals Council found, as relevant here, that the ALJ's residual functional capacity ("RFC") analysis, which found that Plaintiff had moderate limitations in interacting with others, should also have addressed corresponding mental limitations. R. 175.

Upon remand, the case was assigned to a new ALJ, Peter Lee. The new ALJ[2] held a telephonic hearing on April 12, 2021, at which Plaintiff (represented by counsel) and a vocational expert ("VE") testified. R. 62-87. On May 4, 2021, the ALJ denied benefits. R. 18-31. After the Appeals Counsel affirmed, Plaintiff timely appealed to this Court. D.E. 1.

## II.  THE FIVE-STEP SOCIAL SECURITY ANALYSIS

The Social Security Administration uses a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof on the first four steps, and the Commissioner bears the burden on the fifth.

In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). The ALJ found that Plaintiff has not engaged in substantial gainful activity since September 4, 2015, the alleged onset date. R. 21, ¶ 2.

Upon a finding of no substantial gainful activity, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.*

---

[2] From this point forward, "ALJ," unless otherwise specified, refers to ALJ Lee.

§§ 404.1520(c), 416.920(c); *see also* 20 C.F.R. § 416.924(c).  The ALJ found that Plaintiff has the following severe impairments: degenerative disc disease with radiculopathy, lupus, fibromyalgia/arthritis, carpal tunnel syndrome, status post plantar plate tear (left), capsulitis of the ankle (right), obesity, depressive disorder, anxiety disorder.[3]  R. 21-22.

Once a claimant demonstrates a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments.  20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A.  In doing so, the Commissioner must consider the combined effect of all medically determinable impairments, even those that are not severe.  20 C.F.R. § 416.923, 416.924a(b)(4), 416.926a(a) and (c).  If a listed severe impairment is found, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d).  Under this step, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the presumptively-disabling impairments in 20 CFR Part 404, Subpart P, Appendix 1.  R. 22, ¶ 4.

In the fourth step, the Commissioner determines the claimant's "residual functional capacity," (the "RFC") meaning "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).  *Caraballo v. Comm'r of Soc. Sec.*, 2015 WL 457301, at *1 (D.N.J. Feb.

---

[3] The ALJ also noted and classified as non-severe numerous other impairments: Sjogren's syndrome, bronchitis, gastroenteritis, ovarian cysts, vertigo, hypertension, hyperlipidemia, and mild hip osteoarthritis. The ALJ concluded that the conditions "were managed medically and controlled by adherence to recommended treatment." Thus, "[w]ithout more, these conditions do not significantly limit [Plaintiff's] ability to perform basic work activities and constitute only non-severe impairments, both when considered singly and in combination." R. 21.

3, 2015).  The ALJ found that Plaintiff "has the residual functional capacity to perform light work" within certain physical limitations.[4]

Also in the fourth step, the Commissioner must decide whether, based on the RFC, the claimant can return to a prior occupation.  20 C.F.R. § 1520(a) (4)(iv); *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f).  If not, analysis proceeds to step five.  The claimant bears the burden of proof at each of these first four steps.  The ALJ determined, based on Plaintiff's RFC, that she could not perform her past relevant work: pretzel maker and occasional cashier.  R. 29, ¶ 6.

At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience, and RFC.  20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).  This is usually accomplished through VE testimony, usually in the form of hypothetical questions referencing jobs listed in the Dictionary of Occupational Titles ("DOT") (available at https://www.dol.gov/agencies/oalj/topics/libraries/LIBDOT).  Under step five, the ALJ determined that considering Plaintiff's age,[5] limited education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, specifically: bagger, finishing machine operator, and ceiling machine operator.

### III.   STANDARD OF REVIEW

The Court's review of legal issues is plenary.  *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).  But an ALJ's factual findings "'shall be conclusive' if supported by

---

[4] Plaintiff could not "climb ropes, ladders, or scaffolds[,] can never be exposed to unprotected heights or hazardous machinery[,] can occasionally climb stairs and ramps, kneel, stoop, and crouch, but never crawl[,] can frequently reach, finger, and handle, and frequently balance[,] could have occasional contact with supervisors, coworkers, and the public[,] and is able to perform only simple and routine tasks."  R. 24, ¶ 5.

[5] Plaintiff was 45 years old at the time of the alleged disability onset.  She is now 52.

'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (citing 42 U.S.C. § 405(g)).

The substantial evidence standard is deferential, and the ALJ's decision cannot be set aside merely because the Court "acting *de novo* might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.' ") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

But this standard, however deferential, is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (cleaned up)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record").  Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d

5

Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482.

## IV.     DISCUSSION

### A. Plaintiff's systemic prejudice arguments

Much of Plaintiff's brief challenges—without any basis—the entire structure of the SSA system as prejudiced against Plaintiff, a Puerto Rican woman, based solely on the time it has taken to adjudicate her claims. This argument is unpersuasive for several reasons.

First, while the delay might be frustrating, the accusation that the delays are the result of bias are conclusory. Second, the delays in Plaintiff's case were neither inordinately long nor indicative of inaction; indeed, Plaintiff received numerous decisions since her application, at least

6

one favorable (the remand from the Appeals Council).  And finally, Plaintiff undermines her own prejudice claim by highlighting that similar (or worse) delays have plagued the system broadly—across demographic blocs—since the 1980s.  In other words, delays and denials are not unique to Plaintiff, or others similarly situated.  With that framework, the Court turns to the substance, attempting to redirect Plaintiff's scattershot arguments into the appropriate framework.

### B.  The Five-Step Analysis

#### 1.  Steps One and Two

As the Commissioner argues, it does not appear that Plaintiff challenges steps one or two, which the ALJ determined in Plaintiff's favor.

#### 2.  Step Three: the ALJ's impairment analysis was based on substantial record evidence

Plaintiff argues that the ALJ[6] improperly evaluated Plaintiff's "severe mental impairments and severe physical impairments."  Pl. Br. 22-24.  This appears to challenge the ALJ's step three finding that Plaintiff had mild to moderate mental and physical impairments.  Plaintiff's arguments are unpersuasive.

The purpose of listing impairments is to describe, "for each of the major body systems impairments," which impairments are considered severe enough to prevent an individual from doing *any* gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 404.1525(a); 20 C.F.R. § 416.925(a) (emphasis added).  The medical criteria define the listed impairments at a higher level of severity than the statutory "disability" standard because the listed impairments were designed to operate as streamlined, presumed disabilities that make further

---

[6] Plaintiff actually references "ALJs," plural, but later concedes that only the second ALJ's decision is appealed; Plaintiff invokes the first ALJ solely to assert administrative delay. Pl. Reply 4.

7

inquiry unnecessary. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). A claimant asserting an unlisted impairment must show that the unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment through present medical findings equal in severity to *all* the criteria for the one most similar listed impairment. *Id.* at 531.

To conduct the step three analysis, ALJs are not required to "use particular language or adhere to a particular format." *Jones*, 364 F.3d at 505. Nor are ALJs expected "to make reference to every relevant treatment note in a case." *See Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). Rather, ALJ decisions must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d. Cir. 2000)).

Here, the ALJ found that the "severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06." R. 23. The ALJ considered the "paragraph B criteria" of those listings, which require that claimants prove an "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning":

      1.    Understanding, remembering, or applying information;
      2.    Interacting with others;
      3.    Concentrating, persisting, or maintaining pace; or
      4.    Adapting or managing oneself.

See 20 C.F.R. pt. 404, subpt. P., app. 1 §§ 12.04, 12.06.

A "marked limitation" means that a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00F. A "moderate" limitation is one that means that a claimant's "functioning in this area independently, appropriately effectively, and on a sustained basis is fair." *Id.*

8

Taking the mental impairment categories in turn, the Court begins with "understanding, remembering or applying information." The ALJ found only a moderate limitation, noting that medical providers never "noted an objective memory or cognition deficit anywhere in her treatment records." R. 23. The ALJ noted that Plaintiff could perform "simple cooking, can follow spoken and written instructions, requires no accompaniment to travel, was able to relate her medical history and follow instructions in the treatment setting, and drives." *Id.* The ALJ noted a difference in opinion between Plaintiff's treating providers (asserting an extreme limitation) and state agency psychological consultant (mild limitation). *Id.*

Likewise, the ALJ found only a moderate limitation in Plaintiff's ability to interact with others. The claimant alleged limits attributed to pain, not mental impairment. R. 23. The ALJ noted that Plaintiff still socialized with people, went outside unaccompanied, drove, was comfortable at her medical appointments, had a good relationship with her boyfriend, made good eye contact, and was calm and cooperative with her medical providers. *Id.* The ALJ noted that Plaintiff had not lost any job due to interpersonal conflict or issue with authority figures. *Id.* Again, the ALJ noted a conflict between Plaintiff's treating providers (asserting an extreme limitation) and state psychology consultants (mild).

As to concentrating, persisting or maintaining pace, the ALJ also found a moderate limitation. R. 23. The ALJ noted the dispute between Plaintiff's treating provider and the state agency psychology consultants. *Id.* But the ALJ noted "no objective evidence in the records of any abnormality to cognition or focus," again highlighting that Plaintiff could "cook, drive, and shop, … consistent with the ability to persist with simple tasks." *Id.* Like the prior categories, the ALJ noted a discrepancy between treating providers (asserting extreme limitations) and state consultants (moderate). *Id.*

9

And for the final category, adapting or managing oneself, the ALJ found only a mild limitation. R. 23-24. The ALJ noted that Plaintiff reported no self-care issues and acknowledged cooking, shopping, and driving. *Id.* The ALJ noted that Plaintiff was frequently noted to have a normal mood affect and was well-groomed and cooperative. *Id.* at 24. And again, the ALJ noted that Plaintiff's treating psychiatric provider (noting an extreme limitation) and the state psychology consultant (mild) disagreed. *Id.*

Plaintiff responds to these findings with more broadsides against the SSA system. This time, Plaintiff argues that the ALJ's reliance on Plaintiff's positive work history "puts the worker who got fired from a job, higher priority for SSD than the worker who bit the bullet and showed up for work on time even when in pain." Pl. Br. 18-19 ("REGARDING THE PEDESTAL FOR MALINGERING."). Plaintiff, in her counsel's estimation, would have been better positioned for approval of benefits if she had been "fired for talking back to the boss" or "just not showing up for work or leaving work early without telling management that she was leaving." *Id.* 19. Plaintiff also argues that the ALJ ignored Plaintiff's subjective testimony. *Id.* 22 ("REGARDING THE CREDIBLE TESTIMONY BY PLAINTIFF IN THE RECORD.").

These arguments "essentially invite[] the Court to reweigh evidence that the ALJ specifically considered and accorded less weight, which the Court cannot and does not do." *Nova v. Comm'r of Soc. Sec.*, No. CV 19-18145, 2021 WL 1712262, at *6 (D.N.J. Apr. 30, 2021) (citing *Williams*, 970 F.2d at 1182 and *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Corley v. Barnhart*, 102 F. App'x 752, 755 (3d Cir. 2004) (holding that ALJ did not err by failing to afford plaintiff heightened credibility based solely on work history)). But again, Plaintiff's submission fails to demonstrate how the ALJ's findings were not based on substantial evidence.

10

For example, Plaintiff's brief argues that she "needs help and special arrangements in the shower[,] stays in her room all the time[, and] doesn't have money to shop in stores and cannot lift groceries."

But these conclusions—unlike the Commissioner's brief citing to the record—are unsupported. Plaintiff has not shown that her condition medically equals a listed impairment, and this Court "will not construct Plaintiff's arguments for her." *Zavattaro v. Saul*, No. 2:18-CV-3362, 2020 WL 6797138, at *9 (D.N.J. Nov. 19, 2020) (citing *Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("Plaintiff has done no more than thrown down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments."); *see also Atkins v. Comm'r Soc. Sec.*, No. 19-2031, 2020 WL 1970531, at *4 (3d Cir. Apr. 24, 2020) ("'[J]udges are not like pigs, hunting for truffles buried in the record.'") (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)) (cleaned up)); *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments.").

Even setting aside, as Plaintiff urges, the Commissioner's reliance on Plaintiff's work history to find that Plaintiff lacked severe mental impairment, the record nevertheless supports the ALJ's decision. The ALJ noted that that Plaintiff prepares frozen dinners and sandwiches (R. 458), goes out alone (*Id.*), drives (*id.*), and shops in stores for food and personal items (*id.*). At least one medical provider noted that Plaintiff was seen driving in 2019, even after surgery on her right foot. R. 1065; *see also* R. 561, 652, 708, 714, 737, 1114, 1128 (noting "cooperative," "alert," "normal mood and affect")). And the ALJ found that Plaintiff's "ability to interact with her doctors, which necessarily involves cooperating with others, asking for help, and understanding

11

and responding to request and suggestions, is thus illustrative of her ability to interact with others." *Nova v. Comm'r of Soc. Sec.*, No. CV 19-18145, 2021 WL 1712262, at *6 (D.N.J. Apr. 30, 2021).

Finally, Plaintiff's argument that the ALJ did not consider Plaintiff's physical and mental impairments together is also unpersuasive. As the Commissioner argues, the record evidences consideration of all impairments alleged. Plaintiff's argument does not specify, let alone detail, which impairments the ALJ purportedly failed to consider. Accordingly, the Court finds that the ALJ's decision reflects "sufficient development of the record and explanation of findings" and is supported by substantial evidence. *See Burnett,* 220 F.3d at 119; *Jones,* 364 F.3d at 505.

### 3. Step Four: The ALJ's RFC findings were based on substantial evidence in the record.

The ALJ found that Plaintiff "has the residual functional capacity to perform light work" within certain physical limitations. Plaintiff first challenges the ALJ's choice to give "little weight" to the opinion of Plaintiff's treating psychiatrist, Dr. Bahar Hadjiesmaeiloo, arguing that the ALJ's choice "created a meaningless rather than meaningful opportunity to be heard." Pl. Br. 19-22 ("REGARDING A COMPARISON WITH THE *DAUBERT* STANDARD THAT IS USED IN THE TRIALS OF OTHER CIVIL ACTIONS.").

This argument is not only untethered to any precedent or statute, but directly opposed to existing law. As the Commissioner argues, "an ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record." *See Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) (quoting 20 C.F.R. § 404.1527(d)(2)) (affirming the ALJ's rejection, based on other evidence in the record, of a treating doctor's opinion in favor of a state medical consultant who reviewed the plaintiff's records and came to a different conclusion). And that happened here: the ALJ noted inconsistencies between Dr. Hadjiesmaeiloo's opinion and the record, including Plaintiff's mental status examinations, other opinion evidence in the record,

12

and myriad examinations in which Plaintiff was observed to be calm, cooperative, and in an appropriate mood with good insight, judgment, and memory. R. 27-28. The ALJ also noted that Dr. Hadjiesmaeiloo "did not provide a narrative or any analysis of the treatment records to bolster [his] findings." R. 28. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (instructing that a treating source opinion must be "well-supported" for controlling weight); 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (instructing that the weight given to an opinion is dependent on the support for that opinion).

The ALJ also considered the opinions of two state agency physicians, who opined that Plaintiff was not disabled and that she could perform simple, one to three-step tasks with routine breaks, no fast-paced tasks, and infrequent changes in routine. R. 27-28, 95-100, 146-47. These physicians did not assess any limitations getting along with others, but the ALJ explained that he assessed less than full weight to these opinions, as they were composed approximately four years before the ALJ's decision. R. 27. The ALJ found no evidence of impaired judgment or insight, and no erosions in Plaintiff's ability to handle simple work. R. 27-28. The ALJ also noted, contrary to those state doctors' reports, Plaintiff's limitations in interacting with others based on her subjective reports. R. 24-28. In other words, the ALJ used the broad discretion afforded to weigh the evidence in a manner that reflects consideration of the entire record.

Plaintiff also challenges the ALJ's findings that: (1) Plaintiff had a limited education and could understand English, Pl. Br. 24 ("REGARDING ILLITERACY, CONSTITUTIONAL IMPEDIMENTS, AND APPLICATION OF STRICT SCRUTINY")); and (2) that Plaintiff retained the functional capacity to stay on task and avoid work absences, Pl. Br. 30 ("REGARDING RESIDUAL FUNCTIONAL CAPACITY AND PERCENTAGE OF TIME OFF-TASK OR ABSENT FROM WORK")).

The language issue first. This argument appears to dovetail with Plaintiff's accusations—relying on *Korematsu*—that the SSA system is biased against Plaintiff, a Spanish-speaking Latina, and others similarly situated. Pl. Br. 25. Because of this bias, Plaintiff argues, strict scrutiny should apply to this appeal. *Id.*

SSA regulations foreclose general federal question jurisdiction over social security appeals. 42 U.S.C. § 405(h); *Harper v. Sec'y of Health & Hum. Servs.*, 978 F.2d 260, 262-63 (6th Cir. 1992) (citing 42 U.S.C. § 405(h)). But "where a constitutional claim is made in conjunction with a social security benefits case, jurisdiction may attach." *Id.* However, that claim must be "colorable." *Califano v. Sanders,* 430 U.S. 99, 109 (1977). Plaintiff has no concrete support, factual or otherwise, for her allegation of prejudice. As noted above, Plaintiff relies entirely on the protracted appeals timeline to demonstrate prejudice, yet undermines that very argument by highlighting system-wide delays regardless of an applicant's background. Accordingly, this argument is unpersuasive.

Plaintiff's remaining argument on this step contends, in substance, that the ALJ did not consider that Plaintiff's condition had worsened to the point that she could no longer stand or use her hands for any significant period of time. Pl. Br. 30. The ALJ found, however, that the record contradicted Plaintiff's arguments. For example, the ALJ found that "some of [Plaintiff's] medical records indicate that she was independent and unimpeded [and]…the physical examinations of record show reduced grip and dexterity in only one instance early in the period at issue, with mild, isolated reductions in foot strength in late 2020, and no other objective weakness." R. 28.

The record further showed "no objective sensory deficits and no reflex deficits, and … inconsistent findings regarding the claimant's gait. She has been limited to light exertional work in consideration of these abnormalities, but not sedentary work because there are repeated

instances where an abnormal gait was not described in the context of a full physical examination." *Id.* "[Plaintiff] had but did not use an assistive device even during her year of podiatric surgery, which again weighs against reducing her to sedentary work." *Id.* The ALJ relied upon rheumatology, primary care, and radiology records to make these findings, noting "routine and conservative treatment" until surgery, which "made it so she had little to no pain by the end of 2019," shortly before she began podiatric treatment and injections which reduced pain. *Id.* And finally, Plaintiff's non-severe vertigo and fatigue, and subjective symptoms, were "accounted for through appropriate hazard restriction" and "limiting her to simple work with occasional social interaction." R. 29.

Plaintiff's analysis does not address these specific findings. Like Plaintiff's other arguments, there are no citations to the record enabling this Court to compare the ALJ's findings with any contradictory evidence in the record. Accordingly, the Court finds that the ALJ's findings are based on substantial evidence in the record.

### 4. Step Five: The ALJ's findings that there were significant jobs in the national economy that Plaintiff could perform were based on substantial record evidence

Plaintiff challenges the ALJ's determination, having considered the claimant's age, education, work experience, and residual functional capacity, that there are jobs that exist in significant numbers in the national economy that the claimant can perform. R. 30.

#### a. Plaintiff's education and English ability are limited, but Plaintiff is not illiterate

Plaintiff argues that the ALJ should have found that she was functionally illiterate in English, with an education level lower than "limited." R. 29. This argument appears aimed at the ALJ's findings that enough jobs exist in the national economy for someone with both Plaintiff's RFC *and* her language limitations. But it is as unpersuasive as Plaintiff's other arguments, particularly because it refutes her own hearing testimony.

15

"Illiteracy" means the inability to read or write "a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1). The next level is "marginal," which means an "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs" and a 6th grade education level or less." 20 C.F.R. § 404.1564(b)(2). But limited education, which the ALJ found to include Plaintiff, "means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. … 7th grade through the 11th grade level of formal education is a limited education." 20 C.F.R. §§ 404.1564(b)(3), 416.964(b)(3).

Contrary to Plaintiff's arguments, the ALJ's conclusion that Plaintiff had limited education also finds ample support in the record. Plaintiff's brief is contradicted by her own testimony, which the ALJ relied upon, that Plaintiff completed 10th grade (R. 29, 70), could read "short words" (R. 73), and could communicate in English enough to have a short conversation as a cashier. *Id.*

Plaintiff also obtained a driver's license, meaning that she passed a written test. R. 73. To the extent that Plaintiff's brief protests that she could have taken her driver's test in Spanish, Pl. Reply 1-3, there is no testimony in the record to that effect. But even if that were accurate, there remains other evidence in the record that Plaintiff had a "limited" education and spoke and read sufficient language well beyond the "illiterate" level. For example, though a "limited" education generally precludes "the more complex job duties needed in semi-skilled or skilled jobs," Plaintiff has past relevant semi-skilled work as a pretzel maker and cashier. R. 29, 72, 80.

16

### b. The ALJ properly relied on the VE's testimony

Plaintiff argues that the ALJ failed to address one of the hypothetical questions posed to the VE about a hypothetical claimant off task 15% of the time or absent from work three or more days per month. Pl. Br. 32. The VE found that no jobs would exist in the national economy would exist for that hypothetical claimant. R. 94. Plaintiff takes issue with the omission of that hypothetical from the ALJ's decision. Plaintiff argues that the ALJ should have applied the hypothetical to Plaintiff, thereby finding that no jobs existed in the national economy for her. Pl. Br. 32-33. Again, this argument is unpersuasive.

Plaintiff is correct that the ALJ, without explanation, omitted the off-task/absent hypothetical. But Plaintiff's argument essentially repeats her earlier dispute of the ALJ's RFC determination. That is, Plaintiff argues that the ALJ overestimated what work functions Plaintiff can still perform.

However, an ALJ's hypothetical questions are only required to "accurately convey to the vocational expert all of the claimant's *credibly established limitations.*" *Rutherford v. Barnhart,* 399 F.3d 546, 554 (3d Cir. 2005) (emphasis in original) (citing *Plummer v. Apfel,* 186 F.3d 422, 431 (3d Cir. 1999)). The ALJ's broader hypotheticals, which did not mention the off-task/absent issue, mirrored the ALJ's RFC determination (that Plaintiff was not limited to sedentary work), which Plaintiff has not shown to be unsupported by substantial evidence. The off-task/absent hypothetical simply introduced limitations that were not reflected in any objective medical evidence of record, nor consistently established by Plaintiff's testimony. Accordingly, although the ALJ is required to consider all probative evidence of record in making a disability determination, *see* 42 U.S.C. § 423(d)(5)(B); *Johnson v. Commissioner of Social Security,* 529 F.3d 198, 203-05 (3d Cir. 2008), the ALJ's reliance on the vocational expert's response to the first

17

hypotheticals, and omission of the off-task/absent hypothetical, was permissible. *Szallar v. Comm'r Soc. Sec.*, 631 F. App'x 107, 111 (3d Cir. 2015).

## V.  CONCLUSION

For the reasons above, Plaintiff's appeal is **DENIED** and the decision of the ALJ is **AFFIRMED**. An appropriate order accompanies this Opinion.

Dated: December 16, 2022

*[signature]*

Evelyn Padin, U.S.D.J.